Appellate Department, Superior Court, City and County of San Francisco

[Civ. A. No. 1665.   April 3, 1945.]

SHELTON H. MOSS, Respondent, v. ALASKA PACKERS ASSOCIATION (a Corporation), Appellant.

Henry W. Schaldach and Edward R. Kay for Appellant.

Andersen & Resner for Respondent.

MURPHY, J.—Shelton H. Moss, plaintiff and respondent, was a deck engineer on the SS "Homer Lea," a ship owned by the United States of America and operated by and through the War Shipping Administration and the Alaska Packers Association, a corporation. The latter corporation is the defendant and appellant herein. The Alaska Packers Association acted as general agent for and on behalf of the United States of America in accordance with the terms of a General Agency Agreement (Exhibits B and C).

Plaintiff and respondent, on shore leave, having had five drinks of straight scotch whiskey in a bar at Hobart, Tasmania, was struck on the head by a person or persons unknown. He required and received immediate hospitalization in Tasmania. Thereafter he was returned to San Francisco on another vessel. He then sued the Alaska Packers to recover allowances for wages, transportation, maintenance and cure, after leaving the service of the SS "Homer Lea," which he of necessity had to abandon on account of his injury. The United States of America was not joined in the suit, nor was the War Shipping Administration.

Appellant's position is that respondent Moss cannot recover allowances for wages, maintenance and cure because at the time of the injury he was not in the vessel's service, nor about its business, nor within the so-called "going and coming rule," but rather was pleasure bent.

Appellant also contends it cannot be held liable for wages, maintenance and cure because it is not the owner or operator of the vessel, but merely the general agent of the United States of America and that privity of contract, as evidenced by the shipping articles, was between the United States of America and plaintiff and respondent Shelton H. Moss, deck engineer.

Appellant also complains of certain instructions given by the trial court.

█ Plaintiff and respondent was admittedly on shore leave, properly granted by the vessel's officers. In my opinion, he was "in service" while on shore leave.

To hold the agent liable only for injuries incident to the perils of the actual voyage is not consistent with the nature of the employment, nor with the custom among seafaring men. "Shore leave is an elemental necessity in the sailing of ships, a part of the business, as old as the art, not merely a personal diversion." *Aguilar* v. *Standard Oil*, 318 U.S. 724 [63 S.Ct. 930, 87 L.Ed. 1107]. The philosophy of the Aguilar case is sound.

When one considers the nature of a seaman's service to his vessel, including long days or weeks at sea, it would appear that shore leave is a necessity in the maintenance of the crew's morale, without which the efficiency of the ship's operations would be seriously impaired.

█ There is a complete absence of evidence of either misconduct or intoxication on the part of plaintiff and respondent. That he was injured in a bar while drinking is of itself insufficient to establish misconduct.

Seamen's cases, just as railroad men's cases, have long been liberally viewed by the courts. In *Socony-Vacuum Oil Co.,* v. *Smith,* 305 U.S. 424, 431 [59 S.Ct. 262, 83 L.Ed. 265], Chief Justice Stone wrote as follows: "Seamen are the wards of admiralty, whose traditional policy it has been to avoid, within reasonable limits, the application of rules of the common law which would affect them harshly because of the special circumstances of this calling. . . . It is for this reason that remedial legislation for the benefit and protection of seamen has been liberally construed to attain that end."

It is to be noted that in the case before us, the agent, at least partially and for practical purposes to some extent, admitted its responsibility to plaintiff and respondent. Hotel, lodging and hospital bills in Hobart were paid; also his plane transportation to Australia, where the agent (Alaska Packers) maintained plaintiff and respondent. The Alaska Packers also gave him a $50 advance in San Francisco. With this in mind it is difficult to conjure a reason why the company should be permitted to avoid the completion of its obligation under the rules applicable to seamen's wages, cure and maintenance.

■ The contention of appellant that it cannot be held liable for wages, maintenance and care because it is not the owner, but merely the general agent of the United States of America, is untenable for the following reasons.

Concededly, the United States of America owns the SS "Homer Lea." Exhibit B, the service agreement, provides that the Alaska Packers Association is to maintain, manage and conduct the business of the ship. True, the master, provided by Alaska Packers, is designated in the agreement as an employee of the United States of America. But the agreement also sets forth that the ship's crew (including plaintiff and respondent) be obtained in accordance with customary practices. Thus, plaintiff and respondent, a seaman and member of the Marine Firemen's Union, was sent, as is regular and customary, from his union hiring hall to the ship, where he reported to his superior, the first engineer.

The assistant secretary of the Alaska Packers testified that the crew's wages, including the wages of plaintiff and respondent, were paid by sub-agents of the company, even though the money came from the government.

It is further to be remarked that the union agreement with Alaska Packers provides that the company is to employ through the union, which it did. This was the practice prior to ownership by the United States of America of any ships. There was no change in that operation with the advent of war.

The statement of policy announced by the War Shipping Administration, in explanation of that part of the service agreement having to do with the hiring of merchant seamen, specifically provides that agreements between unions and private ship owners be continued and that seamen be employed pursuant to such agreements. It would seem, therefore, that the spirit of the agreement, as well as its letter, is that seamen retain their status as servants of the private ship owners.

In our case, the plaintiff and respondent went directly to the company and the vessel. He had no dealings with the War Shipping Administration or the United States of America. It is reasonable to assume he was not more than vaguely cognizant, if at all, of any relation between the War Shipping Administration, the United States of America, and the company. There was not the slightest suggestion or intimation that the seaman was an employee of the United States of America. He was a seafaring man. He looked to his com-

pany, his ship and his officers to pay him and protect him. This, under the facts presented, he had a right to do, and a duty to do nothing more. Whatever the reciprocal rights, duties and obligations of the United States of America, the War Shipping Administration, and the Alaska Packers Association, they are certainly not the measure of the rights of third parties against any of them for their torts. In this connection, attention is called to the language in *Brady* v. *Roosevelt Steamship Co.,* 317 U.S. 575 [63 S.Ct. 425, 87 L.Ed. 471], which is applicable:

"The liability of the agent for his own negligence has long been imbedded in the law. . . . An instrumentality of the government he might be, and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts."

█ Appellant raises the point that Public Law 17 (Act of March 24, 1943, 78th Congress; 50 U.S.C.A. App. § 1291) makes only the United States suable. It is my opinion that this law does not exempt the private ship owner from suit. Public Law 17 provides that seamen shall have the same rights they always had. They are not to be classified as employees under federal compensation laws. The law also reads that claims for maintenance, cure, wages and damages shall be presented to the private ship owner and not to the United States of America. Thus, the law examined in its entirety leads me to conclude that the private ship owner and not the United States of America is to be considered as the employer.

I find no error in the instructions. That the Alaska Packers Association may make and be responsible for its own contracts with its employees has been sufficiently adverted to herein. To hold that the injuries must be sustained within the so-called "going and coming rule" is to place a narrow and stringent construction upon the reasoning in the Aguilar case, *supra.*

For the foregoing reasons I believe the judgment should be affirmed.

Fritz, J., and Griffin, J., concurred.