Mfi. Justice Harlan
 

 delivered the opinion of the Court.
 

 This case, involving the right of the petitioner, the National Association for the Advancement of Colored People, to carry on activities in Alabama, reaches this Court for the fourth time. In 1956 the Attorney General of Alabama brought a suit in equity to oust the Association, a New York “membership” corporation, from the State. The basis of the proceeding was the Association’s alleged failure to comply with Alabama statutes requiring'foreign corporations to register with the Alabama Secretary of State and perform other acts in order to
 
 *422
 
 qualify to do business in the State;
 
 [1]
 
 the complaint alleged also that certain of the petitioner’s activities in Alabama, detailed below, were inimical to the well-being of citizens of the State.
 

 On the day the complaint was filed, the Attorney General obtained an
 
 ex parte
 
 restraining order barring the Association,
 
 pendente lite,
 
 from conducting any business within the State and from taking any steps to qualify to do business under state law. Before the case was heard on the merits, the Association was adjudged in contempt for failing to comply with a court order directing it to produce various records, including membership lists. The Supreme Court of Alabama dismissed a petition for certiorari to review the final judgment of contempt on procedural grounds, 265 Ala. 349, 91 So. 2d 214, which this Court, on review, found inadequate to bar consideration of the Association’s constitutional claims.
 
 NAACP
 
 v.
 
 Alabama ex rel. Patterson, 357
 
 U. S. 449. Upholding those claims, we reversed the judgment of contempt without reaching the question of the validity of the underlying restraining order.
 

 In the second round of these proceedings, the Supreme Court of Alabama, on remand “for proceedings not inconsistent” with this Court’s opinion, 357 U. S., at 467, again affirmed the judgment of contempt which this Court had overturned. 268 Ala. 531, 109 So. 2d 138. This decision was grounded on belief that this Court’s judgment had rested on a “mistaken premise.”
 
 Id.,
 
 at 532, 109 So. 2d, at 139. Observing that the premise of our prior decision had been one which the State had “plainly, accepted” throughout the prior proceedings here, this Court ruled that the State could not, for the first time on remand, change its stance. 360 U. S. 240, 243. We noted that the Supreme Court of Alabama “evidently was not ac
 
 *423
 
 quainted with the detailed basis of the proceedings here” when it reaffirmed the judgment of contempt,
 
 id.,
 
 at 243-244, and again remanded without considering the validity of the restraining order. In so doing, the Court said: “We assume that the State Supreme Court . . . will not fail to proceed promptly with the disposition of the matters left open under our mandate for further proceedings . . rendered in the prior case.
 
 Id.,
 
 at 245.
 

 Our second decision was announced on June 8, 1959. Unable to obtain a hearing on the merits in the Alabama courts, the Association, in June 1960, commenced proceedings in the United States District Court to obtain a hearing there. Alleging that the restraining order and the failure of the Alabama courts to afford it a hearing on the validity of the order were depriving it of constitutional rights, the Association sought to enjoin enforcement of the order. Without passing on the merits, the District Court dismissed the action, because it would not assume that the executive and judicial officers of Alabama involved in the litigation would fail to protect “the constitutional rights of all citizens.” 190 F. Supp. 583, 586. The Court of Appeals agreed that the matter “should be litigated initially in the courts of the State.” 290 F. 2d 337, 343. It, however, vacated the judgment below and remanded the case to the District Court, with instructions “to permit the issues presented to be determined with expedition in the State courts,” but to retain jurisdiction and take steps necessary to protect the Association’s right to be heard on its constitutional claims.
 
 Ibid.
 

 The jurisdiction of this Court was invoked a third time. On October 23, 1961, we entered an order as follows:
 

 “. . . The judgment below is vacated, and the case is remanded to the , Court of Appeals with instructions to direct the District Court to proceed
 
 *424
 
 with the trial of the issues in this action unless within a reasonable time, no later than January 2, 1962, the State of Alabama shall have accorded to petitioner an opportunity to be heard on its motion to dissolve the state restraining order of June 1, 1956, and upon the merits of the action in which such order was issued. Pending the final determination of. all proceedings in the state action, the District Court is authorized to retain jurisdiction over the féderal action and to take such steps as may appear necessary and appropriate to assure a prompt disposition of all issues involved in, or connected with, the state action. . . .” 368 U. S. 16-17.
 

 In December 1961, more than five years after it was “temporarily” ousted from Alabama, the Association obtained a hearing on the merits in the Circuit Court of Montgomery County, the court which had issued the restraining order in 1956. On December 29, 1961,
 
 [2]
 
 the Circuit Court entered a final decree in which the court found that the Association had continued to do business in Alabama “in violation of the Constitution and laws of the state relating to foreign corporations” and that the Association’s activities in the State were “in violation of other laws of the State of Alabama and are and have been a usurpation and abuse of its corporate functions and detrimental to the State of Alabama . . . .” The decree permanently enjoined the Association and those affiliated with it from doing “any further business of any description or kind” in Alabama and from attempting to qualify to do business there. The Association appealed to the Supreme Court of Alabama, which, on February 28,1963, affirmed the judgment below without considering the
 
 *425
 
 merits. 274 Ala. 544, 150 So. 2d 677. The Supreme Court relied wholly on procedural grounds, detailed more fully below. This Court again granted certiorari, 375 U. S. 810.
 

 I.
 

 We consider first the nonfederal basis of the decision of the Alabama Supreme Court, which is asserted by the State as a barrier to consideration of the constitutionality of the Association’s ouster from Alabama.
 

 In its Assignment of Errors to the Supreme Court of Alabama, the Association specified 23 claimed errors in the proceedings in the trial court.
 
 [3]
 
 Each claim of error was separately numbered and set off in a separate paragraph. Most of the claims alleged that the error involved deprived the Association and those connected with it of rights protected by the Federal Constitution. The brief filed by the Association in 'the State Supreme Court is divided into four sections: “Statement of Case,” “Statement of Facts,” “Propositions of Law” (containing 15 separately numbered and paragraphed propositions of law, with a separate list of cases supporting each), and “Argument.”
 
 [4]
 
 The “Argument” section is subdivided into five parts by Roman numerals unaccompanied by any headings. There is a specific reference in the “Argument” to each assignment of error on which the Association relied.
 
 [5]
 
 Only one assignment of error is mentioned
 
 *426
 
 more than once; that assignment is mentioned twice, both times in connection with the same substantive issue. In only two paragraphs is there a reference to more than one assigned error, one paragraph including a discussion of two related assignments and another including a discussion of four related assignments.
 

 The Supreme Court of Alabama based its decision entirely on the asserted failure of the Association’s brief to conform to rules of the court. Although it referred to Rule 9 of its Rules, which concerns the form of.an appellant’s brief,
 
 [6]
 
 the Supreme Court gave no indication of any respect in which the Association’s brief fell short of the requirements of that Rule, and appears to have placed no reliance on it at all. See 274 Ala., at 546, 150 So. 2d,
 
 *427
 
 at 679. The basis of the decision below was rather “a rule of long standing and frequent application that where unrelated assignments of error are argued together and one is without merit, the others will not be considered.”
 
 Ibid.
 
 Proceeding to apply that rule to the Association’s brief, the Supreme Court held that at least one of the assignments of error contained in each of the five numbered subdivisions of the “Argument” section of the brief was without merit, and that it would therefore not consider the merit of any of the other assignments.
 
 [7]
 
 The Attorney
 
 *428
 
 General of Alabama argues that this is a nonfederal ground of decision adequate to bar review in this Court of the serious constitutional claims which the Association presents. We find this position wholly unacceptable.
 

 Paying full respect to the state court's opinion, it seems to us crystal clear that the rule invoked by it cannot reasonably be deemed applicable to this case. In its brief, the Association referred to each of its assignments of error separately, and specified the argument pertaining thereto. A separate paragraph was devoted to each of the assignments of error except, as noted above, for two related assignments included in one paragraph and four other related assignments included in another paragraph.
 
 *429
 
 These six assignments, like all the others, were specified and explicitly tied to the argument relating to each. We are at a loss to understand how it could be concluded that the structure of the brief did not fully meet the requirement that unrelated assignments of error not be “argued together.” Had the petitioner simply omitted the Roman numerals which subdivide its “Argument” section, intended presumably as an organizational
 
 aid
 
 to understanding, there would have been no conceivable basis for the suggestion that the various errors were argued “in bulk”; and, indeed, the sole basis mentioned in the Alabama court’s opinion for the conclusion that these errors were grouped for argument is the numbering of subdivisions.
 
 [8]
 
 The numbering was a mere stylistic device, which cannot well be regarded as detracting from the brief’s full conformity with the rule in question. The consideration of asserted constitutional rights may not be thwarted by simple recitation that there has not been observance of a procedural rule with which there has been compliance in both substance and form, in every real sense.
 
 Davis
 
 v.
 
 Wechsler,
 
 263 U. S. 22, 24;
 
 Staub
 
 v.
 
 City of Baxley, 355
 
 U. S. 313, 318-320. To the same effect, see this Court’s discussion of a similar aspect of prior proceedings in this case, 357 U. S., at 454-458.
 

 The Alabama courts have not heretofore applied their rules respecting the preparation of briefs with the pointless severity shown here. In the early case of
 
 Bell
 
 v.
 
 Fulgham,
 
 202 Ala. 217, 218, 80 So. 39, 40, the court said:
 

 “The brief filed by appellant is characterized by a degree of informality and an apparent lack of attention to Rule 10 . . . [predecessor to the present
 
 *430
 
 Rule 9]; but the rule is directory, and from the time of its adoption the court has exercised its discretion in the consideration of briefs which fairly and helpfully make the points upon which appellant relies. Agreeably with the practice thus established, the brief for appellant has been considered.”
 

 More recently, in
 
 Bolton
 
 v.
 
 Barnett Lumber & Supply Co.,
 
 267 Ala. 74, 75, 100 So. 2d 9, the court stated again that its rule governing the form of an appellant's brief was “directory” and said that “if appellant’s brief, even though not in compliance with the rule, fairly and helpfully makes the points upon which appellant relies, this court may, in its discretion, consider it.” The court noted that it saw “no reason why there should be any real difficulty in complying with these rules.”
 
 Ibid.
 

 Other cases are in accord. In
 
 Brothers
 
 v.
 
 Brothers, 208
 
 Ala. 258, 259, 94 So. 175, 177, the Alabama Supreme Court said:
 

 “It is true that the brief for appellant does not refer, to the tenth and eleventh assignments of error by number, as it should in strictness have done. But, in view of the simplicity of the record, and of the facts that only four or five rulings are discussed, and that specific reference to the assignments was not necessary to our understanding of the argument, we have preferred to condone the fault in this instance.”
 

 In
 
 Madison Limestone Co.
 
 v.
 
 McDonald,
 
 264 Ala. 295, 302, 87 So. 2d 539, 544, the court treated as sufficient three assignments of error which were “not properly expressed.” In
 
 City of Montgomery
 
 v.
 
 Mott,
 
 266 Ala. 422, 96 So. 2d 766, there were 25 assignments of error, none of which was referred to by number in the appellant’s brief. The Alabama Supreme Court said that the brief did not “strictly conform” to the rules governing “the form and contents” of appellants’ briefs, but that it
 
 *431
 
 did “not feel that the defects in the brief warrant a dismissal of the appeal.”
 
 Id.,
 
 at 424, 96 So. 2d, at 767. The court stated: “We have condoned noncompliance with the rule in question when the record is short and simple and when a strict compliance with the rule is not essential to an understanding of the assignments of error which are argued in appellant’s brief.”
 
 Ibid. Kendall Alabama Co.
 
 v.
 
 City of Fort Payne,
 
 262 Ala. 465, 466, 79 So. 2d 801, 802, is to the same effect.
 

 In
 
 State
 
 v.
 
 Farabee,
 
 268 Ala. 437, 439, 108 So. 2d 148, 149-150, the court said:
 

 “As pointed out by the appellee, appellant’s brief has not complied fully with the standards required by Supreme Court Rule 9 . . . . A concise statement of so much of the record as fully presents every error and exception relied upon referring to the pages of the transcript did not appear under the heading; 'Statement of the Case.’ Only two general propositions of law were set out to sustain the seven assignments of error presented on appeal.
 
 And only one case was cited in appellant’s argument, which seemed to argue several assignments together.
 
 Nevertheless, we will exercise our discretion and give consideration to the points argued. . . .” (Italics added.)
 

 The court thus regarded as too unimportant to prevent consideration of the merits the very ground on which it relies here, even though it was accompanied by other failures to comply with the rules. In
 
 Shelby County
 
 v.
 
 Baker,
 
 269 Ala. 111, 116, 110 So. 2d 896, 900, the court said:
 

 “Appellant has assigned thirty separate grounds as error, but has argued them in groups, so as to make available to this Court application of the rule that where assignments of error not kindred in nature are argued together and one of them is without merit,
 
 *432
 
 the others in the group will not be examined. . . . However, many of the assignments seem to be somewhat kindred, and, in deference to counsel, we will consider them.” (Citations omitted.)
 

 In
 
 Brooks
 
 v.
 
 Everett,
 
 271 Ala. 380, 124 So. 2d 100, the court considered assignments of error although there were 38 of them and none had been “specifically referred to in appellant’s brief.”
 
 Id.,
 
 at 381, 124 So. 2d, at 102. The court said: “. . . [W]e have held that although appellant’s brief does not comply with the rule, if it fairly and helpfully makes the points upon which appellant relies this court may, in its discretion, consider those points on their merits.”
 
 Ibid.
 
 See also
 
 Stariha
 
 v.
 
 Hagood,
 
 252 Ala. 158, 162, 40 So. 2d 85, 89;
 
 Quinn
 
 v.
 
 Hannon,
 
 262 Ala. 630, 632-633, 80 So. 2d 239, 241;
 
 Thompson
 
 v.
 
 State,
 
 267 Ala. 22, 25, 99 So. 2d 198, 200.
 

 The cases cited in the Alabama Supreme Court’s opinion and in the brief of the State Attorney General in this Court quite evidently do not support the State’s position. In some, there were no assignments of error,
 
 Dobson
 
 v.
 
 Deason,
 
 258 Ala. 219, 61 So. 2d 764, or none was mentioned in the appellant’s brief,
 
 Bolton
 
 v.
 
 Barnett Lumber & Supply Co., supra; Pak-A-Sak of Alabama, Inc.,
 
 v.
 
 Lauten,
 
 271 Ala. 276, 279,123 So. 2d 122, 125. In another group of cases, several different allegations of error were joined in a single assignment of error.
 
 Mobile, Jackson & Kansas City R. Co.
 
 v.
 
 Bromberg,
 
 141 Ala. 258, 273, 37 So. 395, 398;
 
 Alabama Chemical Co.
 
 v.
 
 Hall,
 
 212 Ala. 8, 10, 101 So. 456, 458;
 
 Snellings
 
 v.
 
 Jones,
 
 33 Ala. App. 301, 303, 33 So. 2d 371, 372. The remaining cases are the only ones which are at all related to the present case. In them, the Supreme Court of Alabama held that if any one of a group of unrelated assignments of error which had been argued together, or “in bulk,” was insufficient, all of them must fall.
 
 Ford
 
 v.
 
 Bradford,
 
 218 Ala. 62, 65, 117 So.
 
 *433
 
 429, 431;
 
 Taylor
 
 v.
 
 Taylor,
 
 251 Ala. 374, 383, 37 So. 2d 645, 652-653;
 
 First National Bank of Birmingham
 
 v.
 
 Lowery,
 
 263 Ala. 36, 41, 81 So. 2d 284, 287;
 
 Thompson
 
 v.
 
 State,
 
 267 Ala. 22, 25, 99 So. 2d 198, 200;
 
 Bertolla
 
 v.
 
 Kaiser,
 
 267 Ala. 435, 440, 103 So. 2d 736, 740;
 
 McElhaney
 
 v.
 
 Singleton,
 
 270 Ala. 162, 167, 117 So. 2d 375, 380;
 
 Mize
 
 v.
 
 Mize,
 
 273 Ala. 369, 370, 141 So. 2d 200, 201. While it does not always appear in the opinions how the assignments of error were argued; every indication is that, unlike the situation here, they were grouped together “for the purpose of argument,”
 
 First National Bank of Birmingham, supra,
 
 at 41, 81 So. 2d, at 287, and were in fact argued as a group, as the words used by the court suggest. In
 
 McElhaney, supra,
 
 at 166,117 So. 2d, at 380, for example, the court quoted the appellant’s brief, as follows: “Proposition No. 2 refers to and is covered by Assignments 2, 3 & 4 ... .” In the remainder of the discussion of these Assignments in the brief, also quoted,
 
 ibid.,
 
 they are never again mentioned or distinguished. In
 
 Taylor, supra,
 
 at 383, 37 So. 2d, at 652, 51 assignments of error were “grouped and argued together in brief.” None of these cases even approaches a ruling that when, as here, assignments of error are individually specified in connection with the argument relevant to each, they are to be regarded as “argued in bulk” because, forsooth, the argument as a whole is divided on the pages of the brief into numbered subdivisions.
 

 In sum, we think that what we said when this litigation was first here, with respect to the procedural point there asserted as a state ground of decision adequate to bar review on the merits, also fits the present situation:
 

 “Novelty in procedural requirements cannot be permitted to thwart review in this Court applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights.” 357 U. S., at 457-458.
 

 
 *434
 
 The State has urged that if the nonfederal ground relied on below be found inadequate, as we find it to be, the case be remanded to the Supreme Court of Alabama for decision on the merits. While this might be well enough in other circumstances, in view of what has gone before, we reject that contention and proceed to the merits.
 

 II.
 

 The complaint against the Association, as finally-amended, alleged that it was a New York corporation maintaining an office and doing business in Alabama. The acts charged against the Association were:
 

 (1) that it had “employed or otherwise paid money” to Authurine Lucy and Polly Meyers Hudson to encourage them to enroll as students in the University of Alabama in order to test the legality of its policy against admitting Negroes;
 

 (2) that it had furnished legal counsel to represent Authurine Lucy in proceedings to obtain admission to the University;
 

 (3) that it had “engaged in organizing, supporting and financing an illegal boycott” to compel a bus line in Montgomery, Alabama, not to segregate passengers according to race;
 

 (4) that it had “falsely charged” officials of the State and the University of Alabama with acts in violation of state and federal law;
 

 (5) that it had “falsely charged” the Attorney General of Alabama and the Alabama courts with “arbitrary, vindictive, and collusive” acts intended to prevent it from contesting its ouster from the State “before an impartial judicial forum,” and had “falsely charged” the Circuit Court and Supreme Court of the State with deliberately denying it a hearing on the merits of its ouster;
 

 
 *435
 
 (6) that it had “falsely charged” the State and its Attorney General with filing contempt proceedings against it, knowing the charges therein to be false ;
 

 (7) that it had “willfully violated” the order restraining it from carrying on activities in the State;
 

 (8) that it attempted to “pressure” the mayor of Philadelphia, the Governor of Pennsylvania, and the Penn State football team into “a boycott of the Alabama football team” when the two teams were to play each other in the Liberty Bowl;
 

 (9) that it had “encouraged, aided, and abetted the unlawful breach of the peace in many cities in Alabama for the purpose of gaining national notoriety and attention to enable it to raise funds under a false claim that it is for the protection of alleged constitutional rights”;
 

 (10) that it had “encouraged, aided, and abetted a course of conduct within the State of Alabama, seeking to deny to the citizens of Alabama the constitutional right to voluntarily segregate”; and
 

 (11) that it had carried on its activities in Alabama without complying with state laws requiring foreign corporations to register and perform other acts in order to do business within the State.
 

 All of these acts were alleged to be “causing irreparable injury to the property and civil rights of the residents and citizens of the State of Alabama for which criminal prosecution and civil actions at law afford no adequate relief . . . .” The complaint stated also that “the said conduct, procedure, false allegations, and methods used by Respondent render totally unacceptable to the State of Alabama and its people the said Respondent corporation and the activities and business it transacts in this State.”
 

 The last allegation, that the Association has failed to comply with the statutory requirements for a foreign cor
 
 *436
 
 poration to do business in Alabama, furnishes no basis under Alabama law for its ouster. The requirements in question are set out in the Code of Alabama of 1940, Tit. 10, §§ 192-194. These provisions require that before doing business in Alabama a foreign corporation file with the Secretary of State its articles of incorporation and a written instrument designating a place of business within the State and an authorized agent residing there. There is a filing fee of $10. The corporation must file notice of amendments to its articles of incorporation and changes in its place of business or authorized agent.
 
 [9]
 

 
 *437
 
 There is nothing in these sections which attaches the consequence of permanent ouster to a foreign corporation which fails to register.
 
 [10]
 
 That this is not the effect of the statute is conclusively demonstrated by § 194, which provides the State with a different and complete remedy:
 
 .
 
 . [A]ny . . . [foreign] corporation that engages in or transacts any business in this state without complying with the provisions of the two preceding sections shall, for each offense, forfeit and pay to the state the sum of one thousand dollars.”
 

 Alabama cases confirm that the registration requirements are what they appear on their face to be: provisions ensuring that foreign corporations will be amenable to suit in Alabama courts.
 
 [11]
 
 “They constitute a police regulation for the protection of the property interests of the citizens of the state .... The doing of a single act of business, if it be in the exercise of a corporate function, is prohibited. The policy of the Constitution and statute is to protect our citizens against the fraud and imposition
 
 *438
 
 of insolvent and unreliable corporations, and to place them in an attitude to be reached by legal process from our courts in favor of citizens having cause of complaint.”
 
 Alabama Western R. Co.
 
 v.
 
 Talley-Bates Const. Co.,
 
 162 Ala. 396, 402-403, 50 So. 341, 342. See
 
 Armour Packing Co. of La., Ltd.,
 
 v.
 
 Vinegar Bend Lumber Co.,
 
 149 Ala. 205, 42 So. 866;
 
 George M. Muller Mfg. Co.
 
 v.
 
 First National Bank of Dothan,
 
 176 Ala. 229, 57 So. 762. The Attorney General of Alabama has referred us to no case, and we have been able to find none, in which a foreign corporation. was ousted from. Alabama for failing to comply with the registration statute.
 
 [12]
 

 The other asserted grounds for excluding the petitioner from Alabama furnish no better foundation for the action below. The first two grounds relied on are manifestly untenable. Before these proceedings were commenced, this Court had upheld the right of Authurine Lucy and
 
 *439
 
 Polly Anne Meyers to enroll at the University of Alabama.
 
 Lucy
 
 v.
 
 Adams,
 
 350 U. S. 1. Neither furnishing them with financial assistance, in effect a scholarship, to attend the University, nor providing them with legal counsel to assist their efforts to gain admission was unlawful or could, consistently with the decisions of this Court, be inhibited because contrary to the University’s policy against admitting Negroes.
 
 NAACP
 
 v.
 
 Button,
 
 371 U. S. 415.
 

 The third charge listed above is scarcely more substantial. Even if we were to indulge the doubtful assumption that an organized refusal to ride on Montgomery’s buses in protest against a policy of racial segregation might, without more, in some circumstances violate a valid state law, such a violation could not constitutionally be the basis for a permanent denial of the right to associate for the advocacy of ideas by lawful means. As we said at a prior stage in this litigation:
 

 “It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty’ assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.” 357 U. S., at 460.
 

 This Court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See
 
 id.,
 
 at 463-464. “. . . [T]he power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom.”
 
 Cantwell
 
 v.
 
 Connecticut,
 
 310 U. S. 296, 304. “. . . [E]ven though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly
 
 *440
 
 achieved.”
 
 Shelton
 
 v.
 
 Tucker,
 
 364 U. S. 479, 488 (footnote omitted). For other cases elaborating this principle, see
 
 Lovell
 
 v.
 
 Griffin,
 
 303 U. S. 444, 451;
 
 Schneider
 
 v.
 
 State,
 
 308 U. S. 147, 161, 165;
 
 Martin
 
 v.
 
 Struthers,
 
 319 U. S. 141, 146-149;
 
 Saia
 
 v.
 
 New York,
 
 334 U. S. 558;
 
 American Communications Assn.
 
 v.
 
 Douds,
 
 339 U. S. 382;
 
 Kunz
 
 v.
 
 New York,
 
 340 U. S. 290, 294-295-;
 
 Louisiana ex rel. Gremillion
 
 v.
 
 NAACP,
 
 366 U. S. 293. This principle is applicable here even though the ouster of the petitioner from Alabama has been accomplished solely by judicial act; “whether legislative or judicial, it is still the application of state power which we are asked to scrutinize.” 357 U. S., at 463.
 

 In the first proceedings in this case, we held that the compelled disclosure of the names of the petitioner's members would entail “the likelihood of a substantial restraint upon the exercise by petitioner’s members of their right to freedom of association.” 357 U. S., at 462. It is obvious that the complete suppression of the Association’s activities in Alabama which was accomplished by the order below is an even more serious abridgment of that right. The allegations of illegal conduct contained in the third charge against the petitioner suggest no legitimate governmental objective which requires such restraint. Compare
 
 Kunz
 
 v.
 
 New York, supra,
 
 at 294-295.
 

 The fourth, fifth, and sixth charges against the petitioner all involve alleged “false charges” made by the Association or its representatives against state oficiáis.
 
 [13]
 
 
 *441
 
 Without speculating on other possible constitutional infirmities to which these allegations may be subject, cf.
 
 New York Times Co.
 
 v.
 
 Sullivan,
 
 376 U. S. 254, we conclude that, for the reasons discussed above, they furnish no basis for the restriction of the right of the petitioner’s members to associate in Alabama. So too with the seventh charge, which alleges violation of the “temporary” restraining order in effect from 1956 to 1961 (when it was made permanent). We dispose of this charge on the same basis as the others, without considering the sufficiency of the evidence to support the finding that there was a violation of the order or the serious constitutional questions raised by an order which restrained for so long a time the exercise of unquestionable constitutional rights on the grounds involved here. We pass the eighth charge without comment; by no stretch can it be considered germane to the present controversy. The ninth charge, involving alleged breaches of the peace, falls with the third. “There are appropriate public remedies to protect the peace and order of the community . . . ,”
 
 Kunz, supra,
 
 at 294, which do not infringe constitutional rights. The tenth charge, if it adds anything to those which have gone before, simply challenges the right of the petitioner and its members to express their views, by words and lawful conduct, on a subject of vital constitutional concern. Such a challenge cannot stand.
 

 There is no occasion in this case for us to consider how much survives of the principle that a State can impose such conditions as it chooses on the right of a foreign corporation to do business within the State, or can exclude it from the State altogether.
 
 E. g., Crescent Cotton Oil Co.
 
 v. Mississippi, 257 U. S. 129, 137. This case, in truth, involves not the privilege of a corporation to do business in a State, but rather the freedom of individuals to associate for the collective advocacy of. ideas. “Freedoms such as . . . [this] are protected not only against heavy-handed frontal attack, but also from being stifled by more
 
 *442
 
 subtle governmental interference.”
 
 Bates
 
 v.
 
 City of Little Rock,
 
 361 U. S. 516, 523. Nor is
 
 New York ex rel. Bryant
 
 v.
 
 Zimmerman,
 
 278 U. S. 63, which involved New York’s application of a regulatory statute to the Ku Klux Klan, more relevant here than it was at the earlier stage of these proceedings where we said that it “involved markedly different considerations in terms of the interest of the State . . . ,” 357 U. S., at 465. The Court noted
 
 inter alia,
 
 that the
 
 Bryant
 
 decision was “based on the particular character of the Klan’s activities, involving acts of unlawful intimidation and violence, which the Court assumed was before the state legislature when it enacted the statute, and of which the Court itself took judicial notice.”
 
 Ibid.
 

 The judgment below must be reversed. In view of the history of this case, we are asked to formulate a decree for entry in the state courts which will assure the Association’s right to conduct activities in Alabama without further delay. While such a course undoubtedly lies within this Court’s power,
 
 Martin
 
 v.
 
 Hunter’s Lessee,
 
 1 Wheat. 304, we prefer to follow our usual practice and remand the case to the Supreme Court of Alabama for further proceedings not inconsistent with this opinion. Such proceedings should include the prompt entry of a decree, in accordance with state procedures, vacating in all respects the permanent injunction order issued by the Circuit Court of Montgomery County, Alabama, and permitting the Association to take all steps necessary to qualify it to do business in Alabama. Should we unhappily be mistaken in our belief that the Supreme Court of Alabama will promptly implement this disposition, leave is given the Association to apply to this Court for further appropriate relief.
 

 Reversed and remanded.
 

 [1]
 

 Code of Alabama of 1940, Tit. 10, §§ 192-194. See note 9,
 
 infra,
 
 p. 304.
 

 [2]
 

 This was four days before the date on which, by this Court's order of October 23, 1961, the Federal District Court was to proceed with a trial on the merits if the Alabama courts had not yet granted the petitioner a hearing. See
 
 supra.
 

 [3]
 

 The Assignment of Errors is part of the typewritten record filed with this Court.
 

 [4]
 

 There is also a “Conclusion,” which requests reversal of the judgment below.
 

 The brief is reproduced in Appendix B to the petition for certiorari in this Court; the accuracy of the reproduction is not questioned by the State.
 

 [5]
 

 One assignment of error was not mentioned in the Association’s brief at all, and was deemed waived by the Alabama Supreme Court. 274 Ala., at 549, 150 So. 2d, at 682.
 

 [6]
 

 Rule 9 provides:
 

 “Appellant’s brief under separate headings shall contain: (a) under the heading ‘Statement of the Case,’ a concise statement of so much of the record as fully presents every error and exception relied upon referring to the pages of the transcript; (b) under the heading ‘Statement of the Facts,’ a condensed recital of the evidence in narrative form
 
 so as to
 
 present the substance clearly and concisely, referring to the pages of the transcript, and if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, then the statement shall contain a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the substance of the testimony of the witness clearly and concisely; (c) under the heading ‘Propositions of Law/ a concise statement, without argument, of each rule or proposition of law relied upon to sustain the errors assigned, together with the authorities relied upon in support of each, and in citing cases, the names of parties must be given, with the book and page where reported; (d) argument with respect to errors assigned which counsel desire to insist upon. Assignments of error not substantially argued in brief will be deemed waived and will not be considered by the court. The statements made by appellant under the headings 'Statement of the Case’ and 'Statement of the Facts’ will be taken to be accurate and sufficient for decision, unless the opposite party in his brief shall make the necessary corrections or additions.” 261 Ala. XXII.
 

 [7]
 

 The fifth subdivision of the “Argument” section of the petitioner’s brief, which is illustrative of the whole, is as follows:
 

 “V
 

 “The evidence discloses that these proceedings are singular in that there is no showing that such proceedings had been taken against any similar foreign corporation since 1918. It is clear from the manner in which these proceedings were instituted, without notice to appellant, that state officials were attempting to misuse the law to oust appellant from the state purely because appellant’s aims and objectives are at variance with views held by state officials. The question of denial of Fourteenth Amendment rights here involved is before the Court under Assignment of Error Number 10. As pointed out in Proposition Number 1, ante, racial discrimination of any kind is unlawful when imposed and enforced by governmental authorities whether in schools,
 
 Brown
 
 v.
 
 Board of Education,
 
 supra; recreational facilities,
 
 Dawson
 
 v.
 
 Mayor,
 
 supra; in public parks,
 
 Holmes
 
 v.
 
 City of Atlanta,
 
 supra; in intrastate commerce,
 
 Gayle
 
 v.
 
 Browder,
 
 supra; in interstate commerce,
 
 Bailey
 
 v.
 
 Patterson,
 
 supra; and in any and all kinds of public facilities.
 

 “The courts have consistently struck down state regulations and actions which in purpose and effect seek to impose discrimination.
 
 Yick Wo
 
 v.
 
 Hopkins,
 
 118 U. S. 356;
 
 Oyama
 
 v.
 
 California,
 
 332 U. S. 633;
 
 Takahashi
 
 v.
 
 Fish & Game Commission,
 
 334 U. S. 410.
 

 “It is also clear that the state may not impose restrictions upon persons to prevent their advocating by lawful means the elimination of racial discrimination and segregation,
 
 N. A. A. C. P.
 
 v.
 
 Alabama,
 
 supra. What the state is here attempting to do is to prevent the appellant, and those who work in concert with it, from taking lawful action in opposition to illegal state policy which seeks to perpetuate
 
 *428
 
 an unconstitutional pattern of segregation and discrimination, as submitted under Assignment of Error Number 16. In short, the state is using these proceedings to accomplish racial discrimination forbidden by the Fourteenth Amendment, and the judgment herein, in effect, constitutes a forbidden discrimination in violation of the Constitution of tjie United States. .Cf.
 
 Gomillion
 
 v.
 
 Lightfoot,
 
 supra.
 

 “Under these circumstances, denial of appellant's motion for a rehearing was error, as submitted under Assignment of Error Number 23, and a deprivation of due process as guaranteed under the Fourteenth Amendment.”
 

 The Supreme Court of Alabama dealt with the arguments thus presented as follows:
 

 “Assignments of error 10, 16 and 23 are argued together in Subsection V of appellant’s brief. No. 10 is unrelated to the others and charges that the court erred in denying appellant's motion for rehearing.
 

 “It is settled that a decree denying an application for rehearing will not support an appeal; nor is such a decree subject to review on assignments of error on appeal from the final decree. . . . [Citations omitted.]
 

 “Since assignment of error 10 is without merit and is argued with Nos. 16 and 23, the others are not considered. Taylor v. Taylor, 251 Ala. 374, 37 So. 2d 645.” 274 Ala., at 548-549, 150 So. 2d, at 681-682.
 

 This is illustrative of the disposition below of the remainder of the petitioner’s “Argument.”
 

 [8]
 

 “The argument section of appellant’s brief is divided into five different subdivisions, each dealing with the argument of two or more assignments of error.” 274 Ala., at 546, 150 So. 2d, at 679. See also the first sentence of the portion of the court’s opinion quoted in note 7,
 
 supra,
 
 p. 296.
 

 [9]
 

 “Every corporation not organized under the laws of this state shall, before engaging in or transacting any business in this state, file with the secretary of state a certified copy of its articles of incorporation or association and file an instrument of writing, under the seal of the corporation and signed officially by the president and secretary thereof, designating at least one known place of business in this state and an authorized agent or agents residing thereat; and when any such corporation shall amend its articles of incorporation or association, or shall abandon or change its place of business as designated in such instrument, or shall substitute another agent or agents for the agent or agents designated in such instrument of writing, such corporation shall file a new instrument of writing as herein provided, before transacting any further business in this state.
 

 “Such instrument when filed by a corporation engaged in any business of insurance must be filed in the office of the superintendent of insurance, and when filed by a corporation engaged in any other business than that of insurance must be filed in the office of the secretary of state, and there shall be paid at the same time for filing such instrument to the officer with whom the same is filed the sum of ten dollars for the use of the state.
 

 “It is unlawful for any foreign corporation to engage in or transact any business in this state before filing the written instrument provided for in the two preceding sections; and any such corporation that engages in or transacts any business in this state without complying with the provisions of the two preceding sections shall, for each offense, forfeit and pay to the state the sum of one thousand dollars.” Code of Alabama of 1940, Tit. 10, §§ 192=194.
 

 These provisions are carried forward, with some changes, in the Code of Alabama (1958 Recomp.), Tit. 10, §§ 21 (90)-21 (92). Since
 
 *437
 
 the Association has been restrained since 1956 from complying with the statutory requirements, the 1940 provisions are applicable to this case.
 

 The complaint alleged also that the Association wras violating Art. 12, §232, of the Alabama Constitution, which provides:
 

 “No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. Such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in the state. The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state. Strictly benevolent, educational, or religious corporations shall not be required to pay such a tax.”
 

 [10]
 

 Compare, e.
 
 g.,
 
 the provisions of Mass. Gen. Laws Ann., c. 181, § 19; Vermont Statutes Ann., Tit. 11, §861.
 

 [11]
 

 See the second sentence of Art. 12, § 232, of the Alabama Constitution, quoted in note 9,
 
 supra.
 

 [12]
 

 The Circuit Court's decree, presumably an exercise of the court's general powers in equity, was not accompanied by any opinion, but was evidently based on the court’s finding that the other allegations of the complaint were proved by the evidence, and, along with the Association’s failure to register, warranted its ouster from the State. (The court reserved the right “at a future date to state in an opinion its full and complete findings of fact and its rulings on the law in this case, with appropriate citations of authorities.” So far as we are presently advised, no opinion has been filed.) Nothing in the decree suggests that the court regarded failure to register by itself as a sufficient basis for ouster under Alabama law.
 

 Even if Alabama law were otherwise, past failure to register could not constitutionally be made the basis for
 
 permanently
 
 preventing the Association from registering and thereby denying its members the right to associate in Alabama. See
 
 infra,
 
 pp. 309-310.
 

 Since we think it clear from the foregoing that the Association may not, under Alabama law, be ousted from the State merely for failure to register, it is unnecessary for us to consider the petitioner’s other contentions that, as a nonprofit organization, it is exempt from the registration requirement, and that, having knowingly permitted the Association to carry on its activities in Alabama since 1918, the State was barfed by laches from invoking the registration requirement in 1956.
 

 [13]
 

 The “false charges” with which the fourth charge against the Association is concerned were made (and later withdrawn) by Authurine Lucy, in proceedings in the Federal District Court to compel officials in the University of Alabama to vacate an order suspending her from attendance at classes. See
 
 Lucy
 
 v.
 
 Adams,
 
 Civ. No. 652, decided in the United States District Court for the Northern District of Alabama on January 24, 1957.
 

 The fifth and sixth charges against the Association concern the proceedings in this case, and were added to the complaint, along with the fourth charge, by amendment in 1961.