IN THE INTEREST OF JOHN DOE, BORN ON
JUNE 16, 1955, JUVENILE-APPELLANT

No. 5355

SEPTEMBER 7, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This case involves a challenge by a juvenile to the constitutionality of Honolulu's curfew ordinance, section 13-3A.1 of the Revised Ordinances of Honolulu (1969), which reads:

> *Curfew.* No person under the age of eighteen years shall loiter about any public street, avenue, alley, park or other public place between the hour of 10:00 p.m., and the time of sunrise of the following day unless accompanied by his or her parent or legal guardian having legal custody and control of his or her person, or by his or her spouse.

The appellant, then 16 years of age, was arrested for violation of the ordinance at 11:20 p.m. on September 18,

1971, while sitting in front of a house. Because HRS § 571-11(1) grants exclusive jurisdiction to the Family Court over any child alleged to have violated any federal, state, or local law or municipal ordinance, a Family Court hearing was held on February 3, 1972. The referee[1] found that the appellant had been a passenger in a car involved in a high speed chase through the city, that he had not gone directly home from a movie, as his parents had instructed him to do, and that he was a law violator.

The appellant then moved to dismiss the referee's Findings and Recommendations on the ground that the curfew ordinance was unconstitutional. The referee denied the motion, and the appellant made a timely request for a hearing by a judge. On September 6, 1972, following an earlier hearing, the judge of the Family Court confirmed the referee's Findings and Recommendations and denied the Motion to Dismiss.

On appeal to this court the appellant argues that the ordinance violates the due process guarantees of the Fifth[2] and Fourteenth[3] Amendments of the United States Constitution because it is so vague and overbroad that it fails to provide sufficient notice as to what conduct constitutes a violation. The requirements of Article I, Section 4 of the Hawaii Constitution[4] are no less stringent than those of the United States Constitution.

The State answers that the terms of the ordinance are clear and certain enough to apprise anyone of pro-

---

[1]Act 219, Session Laws of Hawaii 1973, effective June 14, 1973, changes the name of Family Court referees to District family judges.

[2]The Fifth Amendment states, in relevant part:
    No person shall be . . . deprived of life, liberty, or property, without due process of law . . . .

[3]The Fourteenth Amendment states, in relevant part:
No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[4]Article I, Section 4 states:
    No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of his civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

scribed conduct, and, in addition, that minors may be treated differently from adults as a class.

Challenges to vagrancy-type statutes have had a long history in Hawaii, and such precedents are dispositive of the loitering element in the ordinance before us.

In an early case, *Territory* v. *Anduha,* 31 Haw. 459 (1930), *aff'd* 48 F.2d 171 (9th Cir. 1931), this court considered the constitutionality of a 1929 statute making it illegal to "habitually loaf, loiter and/or idle upon any public street or highway or in any public place." We found the statute unconstitutionally overbroad because it drew "no distinction between conduct that is calculated to harm and that which is essentially innocent." 31 Haw. at 461.

The arguments advanced by the appellant likewise have been the basis of several recent opinions by this court. In *State* v. *Abellano,* 50 Haw. 384, 441 P.2d 333 (1968), we held that a statute proscribing presence at a cockfight or gambling game was unconstitutionally vague, stating at 50 Haw. 385, 441 P.2d at 334:

> A fundamental aspect of the somewhat amorphous concept of due process of law is that a penal statute must state with reasonable clarity the acts it proscribes, *Territory* v. *Naumu,* 43 Haw. 66 (1958); *Territory* v. *Anduha,* 31 Haw. 459 (1930), *aff'd* 48 F.2d 171 (9th Cir. 1931). A criminal statute is unconstitutional if it is not
>
>> sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties . . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Connally* v. *General Const. Co.,* 269 U.S. 385, 391 (1926).

The foregoing quotation from *Abellano* was used in *State* v. *Shigematsu,* 52 Haw. 604, 606, 483 P.2d 997, 998 (1971), in which we held that a statute making it illegal to be present at a place barricaded so as to make it difficult for police to discover gambling was too vague and overly broad. In *State* v. *Grahovac,* 52 Haw. 527, 480 P.2d 148 (1971), we also held unconstitutionally vague and overbroad a statutory sanction against wandering about the streets at late or unusual hours of the night without any visible or lawful business. With respect to the wandering provision, we said at 52 Haw. 535, 480 P.2d at 153:

> A law of vague meaning falls short of "due process" demands when it neither gives fair notice to a person what conduct is prohibited nor prescribes fixed standards for adjudging guilt when that person stands accused. *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 402-03 (1966). Additionally in application, such legislation provides "for government by the moment-to-moment opinions of a policeman on the beat."
>
> Plainly in light of these precepts, HRS § 772-1, Wandering Provision's sanction against one who "wanders about the streets at late or unusual hours of the night, without any visible or lawful business" is too limitless and hence unconstitutional. *Accord, Ricks* v. *District of Columbia,* 414 F.2d 1097 at 1107 (1968).
>
> The word "wanders" delineates no ambit of conduct susceptible to agreed understanding. Whether any and all walking is included in "wandering" is a definitional mystery that subjects a pedestrian to the unbridled discretion of an officer whose standard for law enforcement is equally as nebulous.
>
> Amorphous conditions of time and purpose lend no specificity. "Late or unusual hours" depend totally upon personal fancy. "Business" could apply to voca-

tional, recreational, or whimsical pursuit.

The State may not require such guesswork from its citizens in the face of criminal liability. This provision is also void. (footnote omitted)

In view of these authorities, we hold that the Honolulu curfew ordinance prohibiting loitering by juveniles at night is so vague and overbroad as to violate due process standards. The term "loitering" is simply too vague and imprecise because it fails to give proper notice as to what conduct constitutes unlawful activity and, in addition, its broad sweep has the effect of inhibiting otherwise lawful conduct.

The appellee cites *People* v. *Walton,* 70 Cal. App. 2d 862, 161 P.2d 498 (1945) as authority for the proposition that such loitering statutes can be constitutionally justified insofar as their application to juveniles is concerned. That case was essentially decided on the ground that a classification discriminating between adults and minors was not arbitrary and unreasonable. However, the more recent United States Supreme Court opinion in *In re Gault,* 387 U.S. 1 (1967), greatly circumscribes distinctions between juveniles and adults in terms of constitutional protections.

The *Gault* case is the most frequently cited decision dealing with the due process protections to be afforded to juveniles because of its lengthy consideration of "constitutional domestication"[5] of the juvenile system. In that case, the juvenile, then 15 years of age, was found in an informal hearing before a juvenile court judge to have made a lewd telephone call and sentenced to spend the balance of his minority in a state industrial school. The maximum sentence for an adult convicted of the same offense was two months. Reversing a refusal to grant habeas corpus, the Supreme Court declared that, in spite of the desirability of flexible procedures in delin-

---

[5] 387 U.S. at 22.

quency proceedings, a child who is subject to commitment in a state institution is entitled to be advised adequately and in advance of the charges against him, to be protected against self-incrimination by the application of adult criminal standards for valid confessions, to have counsel present in his defense, and to confront sworn witnesses who are subject to cross-examination.

The trend toward extending full constitutional protection to juveniles has continued since *Gault*. In *In re Winship*, 397 U.S. 358 (1970), the Court held that juveniles, like adults, are constitutionally entitled to proof beyond reasonable doubt when they are charged with a violation of criminal law.

While there may be some variance between the constitutional rights of minors and those of adults, as evidenced by *McKeiver* v. *Pennsylvania*, 403 U.S. 528 (1971), in which the Supreme Court held that a trial by jury is not constitutionally required in the adjudicative phase of juvenile delinquency proceedings, it is clear from the foregoing decisions that those rights which are involved in the present litigation do have equal application.

It is our opinion that the ordinance involved in this appeal is so vague and overbroad that it violates the appellant's constitutional due process rights.

Reversed.

*Richard Turbin,* Deputy Public Defender (*Donald K. Tsukiyama,* Public Defender, of counsel) for Juvenile-Appellant.

*Olen E. Leonard* and *M. Gay Conklin,* Deputy Attorneys General (*George Pai,* Attorney General, of counsel) for Appellee.

DISSENTING OPINION OF RICHARDSON, C.J.,
WITH WHOM MARUMOTO, J., JOINS

I dissent.

I.    The majority correctly states that *"In re Gault,* 387 U.S. 1 (1967), greatly circumscribes distinctions between juveniles and adults in terms of constitutional protections." Indeed, *Gault* and *In re Winship,* 397 U.S. 358 (1970), have extended important procedural due process rights to juveniles. Although these cases have "circumscribed" the distinctions between juveniles and adults, certain constitutional distinctions remain, even in the area of due process. As Mr. Justice Blackmun opined for the majority, "The Court . . . has not yet said that *all* rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile . . . ." *McKeiver* v. *Pennsylvania,* 403 U.S. 528, 533 (1970).

Even greater distinctions are allowed in the area of substantive rights. The state classification discriminating between adults and juveniles remains a valid one. The classification of juveniles is neither arbitrary nor unreasonable. *People* v. *Walton,* 70 Cal. App. 2d 862, 161 P.2d 498 (1945). The distinction between juveniles and adults is a natural classification based on a compelling state interest in protecting juveniles.

Juveniles as a class are subject to different regulations and restrictions than adults. The curfew ordinance is but one of many restrictions that are validly applied to juveniles. Many of these regulations restrict the juveniles' freedom of movement. Juveniles are not allowed to enter bars or places where pornographic material is displayed. They are not allowed to drive until they reach the age of 15. Nor are they allowed to loiter without parent or guardian between the hours of 10 p.m. and sunrise. All of these restrictions on juvenile freedom of movement are valid when balanced against the compelling state interest in protection of juveniles.

*Gault* held that the state's interest did not extend to

deprivation of important Fifth and Sixth Amendment procedural rights. The regulation of juvenile activity by the application of different substantive law remains a valid discriminatory action by the state.

II.    An overbroad statute is one which proscribes both constitutionally protected and unprotected conduct. *NAACP* v. *Alabama,* 377 U.S. 288, 307 (1964); *Territory* v. *Anduha,* 31 Haw. 459, 462 (1930). In the past "loitering" and "vagrancy" statutes have been held unconstitutional because their broad sweep included both protected and unprotected conduct. See *Territory* v. *Anduha, supra,* and *State* v. *Grahovac,* 52 Haw. 527, 480 P.2d 148 (1971).

The case at hand may be distinguished from *Anduha* and *Grahovac* in that we are here dealing with a curfew statute for minors, not a law of general application as in *Anduha* and *Grahovac.* The statutes in those two cases were constitutional because they proscribed conduct which was protected to adults under the Constitution.

It is clear that state restriction of the procedural due process rights of minors is limited. *In re Gault, supra.* It is also clear that because the state has a most compelling interest in the activities of minors the state may restrict certain substantive rights of minors that may be constitutionally protected to adults. Because the police power of the state is more encompassing with regard to minors, I do not feel that the use of the word "loiter" in the context of a curfew statute is overbroad.

Limitations on freedom of movement may be overbroad as to adults but when balanced against a higher standard of state interest in the welfare of juveniles such limitations are valid as applied to juveniles. An ordinance that limits the nighttime freedom of movement of minors is not overbroad. It does not proscribe protected conduct because the state has the power to restrict the nighttime activities of minors.

III.    The terms "vagueness" and "overbreadth" are often heard together. Perhaps that is because a vague statute is of necessity overbroad. When the conduct proscribed is unclear then the statute in question has swept too broadly. The converse, however, is not true. A statute that is overbroad is not always vague. Perhaps because of the close relationship of the two concepts there exists a tendency to label that which is overbroad as vague. This has resulted in an overuse of the limited concept of vagueness. Void for vagueness is too often added as frosting on the cake when the statute is in fact only overbroad.

The test for vagueness should be whether the "terms [are] so vague that men of common intelligence must necessarily guess at its meaning." *Connally* v. *General Const. Co.*, 269 U.S. 385, 391 (1926) cited in *State* v. *Miller*, 54 Haw. 1, 3, 501 P.2d 363 (1972). I am not convinced that because a term which may be *overbroad* as applied to adults is used in a juvenile curfew statute that statute becomes vague. Nor am I convinced that juveniles of common intelligence do not understand the word "loiter" in the context of the curfew statute.

IV.    I would uphold the ordinance on the grounds that the state has a high interest in protecting juveniles. Because of this interest, juvenile conduct may be more strictly regulated than adult conduct. Because of this greater power, restrictions which may be overbroad as to adults are not necessarily overbroad when applied to minors. Although the term "loiter" may be overbroad as a restriction on adult activity it does not proscribe conduct protected to juveniles. Nor is the word "loiter" vague in the context of a juvenile curfew ordinance. As in *State* v. *Miller, supra,* "[t]he statute in question requires a person to conform his conduct to a comprehensible standard measured by common understanding." Surely juveniles in the State of Hawaii are capable of understanding and conforming to R.O.H. sec. 13-3A.1.