ALABAMA EDUCATION ASSOCIA-
TION, a corporation, et al.,
Plaintiffs,

v.

George WALLACE, as Governor of the
State of Alabama, et al.,
Defendants.

Civ. A. No. 3869–N.

United States District Court,
M. D. Alabama, N. D.

Aug. 22, 1973.

Solomon S. Seay, Jr., Gray, Seay & Langford, Montgomery, Ala., for plaintiffs.

T. W. Thagard, Jr., Smith, Bowman, Thagard, Crook & Culpepper, Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge and JOHNSON and VARNER, District Judges.

## OPINION AND ORDER

PER CURIAM.

At its Second Special Session in 1971, the Alabama Legislature passed Act No. 3, which thereafter became law on its approval by the Governor on November 22, 1971. According to its preamble, the purpose of the Act was the support, maintenance, and development of public education through annual appropriations for the fiscal years ending September 30, 1972, and September 30, 1973. Teacher pay raises as set out in Section 4 of Act 3 were conditioned as follows:

. . . Said county or city school board shall not pay the aforementioned raise to any teacher who participates in, encourages or condones any mass truancy even for a day, or any extra-curricular demonstration which is not approved by the City, County or State Board of Education and said teacher shall forfeit the aforementioned increase for that particular year. The State Board of Education may review the action of any System, City or County and require the forfeiture and may withhold said amount from appropriation to the said City or County school board and said teacher or may review and direct payment to said teacher.

On January 3, 1972, the Thomasville City Board of Education requested each Thomasville school teacher to indicate that he or she had not engaged in the conduct proscribed by Act No. 3 in order to qualify for the specified pay raises. This request was in the form of a memorandum in which the above-quoted portion of the Act was set out; each teacher was asked to sign and return to the

684

Thomasville City Board of Education his pledge that he had ". . . not participated in, encouraged or condoned any mass truancy from any school in the Thomasville City School System, even for a single day, or any extra-curricular demonstration which was not approved by the City or State Board of Education."

The individual plaintiffs did not sign the memorandum or pledge and consequently did not receive the pay raises specified in Act No. 3. These individual teacher-plaintiffs, either directly or through their representatives, protested their failure to receive the pay raises at a meeting before the Thomasville Board of Education. The Board declined to change its position on withholding the pay raises. This lawsuit followed.

The plaintiffs bring this Section 1983 action [1] against the appropriate state and local school officials, challenging the constitutionality of the forfeiture provisions of Act 3. Plaintiffs seek to have the forfeiture provisions declared facially unconstitutional and the enforcement of the provisions enjoined. Plaintiffs claim that the provisions are violative of due process, are impermissibly vague, and place a prior restraint on the exercise of their First Amendment rights.

## PRELIMINARY CONSIDERATIONS

Before reaching the merits of plaintiffs' complaint, there are certain preliminary matters that need discussion.

A. Standing to Sue.

 There is no problem in this case with individual plaintiffs' standing to sue. However, there is a serious question whether the plaintiff association has standing to sue in this case. It appears that this case falls somewhere between NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), which held the NAACP had standing to challenge the constitutionality of a statute infringing upon the right of the NAACP and its members to associate for the purpose of assisting persons who seek legal redress for infringement of their rights, and Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), which held that an association lacked standing to seek judicial review where the association asserted no individualized harm to itself or its members. In the present case, plaintiff-association claims that the constitutional rights of its members are infringed by the challenged statute but makes no claim that the association itself suffers injury or that the members' rights sought to be protected are such that they will be compromised if members themselves seek to protect those rights. As a matter of fact, four such members are also plaintiffs and claim to represent the class of teachers affected by the challenged statute. This Court is of the opinion that where constitutional rights are asserted, there must be, absent some special circumstances such as those involved in NAACP v. Alabama, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964), an injury to the organization distinct from that to its membership. However, this matter is not a vital consideration to the maintenance of this* case since the individual plaintiffs appear to represent the class of persons affected and to be affected by the challenged statute. This Court does not feel that it is proper for the Alabama Education Association, a corporation, to be allowed to participate as a party-plaintiff in this case; rather, its participation in this case will be considered as that of an amicus curiae.

1. Title 42, U.S.C. Sec. 1983. Civil Action for Deprivation of Rights. Every person who, under any color of any statute, . . . of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured and an action at law, suit in equity, or other proper proceedings for redress.

B. Exhaustion of Remedies.

■ While, as indicated above, on February 19, 1972, the plaintiff-teachers protested their failure to receive the pay raises at a meeting before the Thomasville Board of Education, they have not pursued completely their state administrative or judicial remedies. However, the contention that exhaustion of state remedies is a prerequisite to a federal court's considering on its merits a case seeking relief under Section 1983 is of no validity. See Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) and the cases therein cited. Such a contention was earlier laid to rest by this circuit in Hobbs v. Thompson, 448 F.2d 456, 461 (1971) when Circuit Judge Goldberg, speaking for the Court, wrote:

It is therefore clear that where civil rights are asserted, exhaustion of state remedies has not been held to be a prerequisite to the maintenance of a federal cause of action under section 1983. A fortiori, where the civil rights complaint is framed in terms of facial unconstitutionality, courts have held exhaustion inapplicable since accelerated relief is the essence of the action.

C. The Doctrine of Abstention.

■ Neither is there any obligation on this Court to abstain. See Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). As will be noted later, this Court concludes that portions of the challenged statute are not fairly subject to an interpretation which will render unnecessary the federal constitutional questions raised. Rather, as in Baggett, the statutory language under scrutiny in this case is subject to an infinite number of meanings.

■ Abstention is particularly inappropriate where a statute is justifiably attacked on its face as abridging free expression. See Dombrowski, supra. This principle was not vitiated by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). While the court in Younger stated:

Moreover, the existence of a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. Where a statute does not directly abridge free speech, but—while regulating a subject within the State's power—tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so.

This caveat goes to the merits of the case and does not state a ground for abstention.

## MERITS

■■ As to that portion of the statute that denies pay raises to teachers who participate in, encourage or condone unapproved extra-curricular demonstration, it should be kept in mind that "the theory that public employment which may be denied altogether may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967). Particularly uniform has been the Supreme Court's rejection of restrictions placed on the private speech or associational activities of teachers. See Pickering, supra; Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967); Keyishian, supra; Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L. Ed.2d 231 (1960); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L. Ed. 216 (1952). While this Court recognizes that the State of Alabama might have some legitimate interest in the extramural speech and associational activities of its teachers, it appears to us that there is no justification for restricting

the right of a teacher to engage in non-partisan advocacy of social or political reform, absent a showing that such activity reflects substantially on his or her performance in class or interferes with the regular operation of the schools. On this point, the Supreme Court in Shelton v. Tucker, *supra,* 364 U.S. at 488, 81 S.Ct. at 252 wrote:

> . . . even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.

■ Thus, even though state and local school officials of Alabama might have a legitimate interest in regulating the conduct of teachers in the midst of school unrest, the flat denial (including retroactive denials) of raises to teachers who participate in, encourage or condone extra-curricular demonstrations not approved by the school board constitutes a comprehensive interference with associational freedom which goes far beyond what might be justified in the protection of the state's legitimate interest. This portion of the forfeiture provision is clearly unconstitutional in its entirety.[2]

■ The plaintiffs vigorously challenge that portion of Act 3 which states, "Said county or city school board shall not pay the aforementioned raise to any teacher who participates in, encourages or condones any mass truancy even for a single day. . . ." It is plaintiffs' contention that this provision

on its face violates their First Amendment rights in that the language of the statute is unduly vague, uncertain and overly broad. Defendants, while admitting the presence of First Amendment interests on the part of plaintiff-teachers, contend that the statute "is a legitimate exercise of the state's police power to enact statutes dealing with truancy and to provide for the disciplining of those encouraging truancy." There is no question that the state has comprehensive authority "to prescribe and control conduct in the schools." Tinker v. Des Moines School Dist., 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969). Moreover, the state has a substantial interest in prohibiting actions which "materially and substantially disrupt the work and discipline of the school." *Tinker, supra;* Healy v. James, 408 U.S. 169, 189, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972). However, it is an established canon of constitutional law that statutes which restrict or place limits on First Amendment freedoms must "be narrowly drawn to meet the precise evil the legislature seeks to curb." United States v. C.I.O., 335 U.S. 106, 141, 68 S.Ct. 1349, 1367, 92 L.Ed. 1849 (1948).

### A. Vagueness.

■ While presumably "mass truancy" means the wholesale and unexcused absence of teachers and students from school, the scope of this statutory provision is unclear. The statute makes no distinction between the private conduct of the teacher and his in-classroom activities. Counseling one's own children appears to be sufficient to trigger the forfeiture provisions of the Act.[3] Fur-

---

2. In their memorandum brief to this Court, defendants' counsel concede the unconstitutionality of that portion of the statute in this language:

 After consideration of the applicable decisional law the undersigned counsel will not urge this Court to hold that that portion of Act 3 which provides for pay forfeitures stemming from a teacher's participation, etc. in an extra-curricular dem-

onstration not approved by the Board of Education, is constitutional.

3. The defendants in their brief cite the fact that plaintiffs had children who participated in a student boycott. Evidently the behavior of one's children was used in this case to measure whether the teacher "condones" mass truancy.

thermore, it appears that passive encouragement as opposed to active support may also trigger the forfeiture provision of the Act. It is not even clear whether a teacher who lectures on civil disobedience would fall under the statute. It is clear though that a teacher who would seek to avoid safely the coverage of this statute would be forced to curtail substantially his own political expressions or activities.

The Supreme Court has recently discussed the vices that render a vague law unconstitutional under the due process clause. See Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L. Ed.2d 222 (1972).

. . . First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

The provision of Act 3 now under scrutiny in this case (". . . participates in, encourages or condones . .") also suffers from these vices. It is so unclear "that men of common intelligence must necessarily guess at its meaning and differ as to its application." It also allows for discriminatory enforcement by failing to provide an explicit standard of reference. Most importantly, however, it serves to restrict plaintiffs' First Amendment rights, in that plaintiffs will have to limit their own political activities to avoid application of the statute.

B. Overbreadth.

 An enactment is constitutionally overbroad if it sweeps within its regulations actions that are protected under the First Amendment. See NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964); NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Shelton v. Tucker, 364 U.S. 479, 488, 81 S. Ct. 247, 5 L.Ed.2d 231 (1960). While the state may legitimately restrict activities which disrupt or are about to disrupt normal school activities, Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972), the provision in the statute in question that reads "encourages or condones" is not limited to activities which disrupt or are about to disrupt normal school activities. These plaintiffs as teachers are forced by this provision of the statute to relinquish rights that they would otherwise enjoy as citizens. Any comments or discussions the plaintiff-teachers might have that the school officials would construe as favoring a boycott or strike in the schools could cause them to suffer a forfeiture of their pay raise.

The Supreme Court has more than once instructed that "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960), quoted in Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 683, 17 L.Ed.2d 629 (1967). Yet this provision in Act 3, in attempting to deter "mass truancy," broadly sweeps within its provisions a variety of actions that are subject to First Amendment protections. "Precision of regulation must be the touchstone in an area so closely touching our

**688**

most precious freedoms." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963).

Accordingly, we hold that Act 3, Acts of Alabama, Second Special Session, 1971, is facially unconstitutional in that it exceeds the permissible bounds of state regulation. It is so ordered.