**ELK GROVE FIREFIGHTERS LOCAL NO. 2340 et al., Plaintiffs,**

v.

**Charles A. WILLIS, Village Manager of the Village of Elk Grove, et al., Defendants.**

**No. 74 C 2412.**

United States District Court, N. D. Illinois, E. D.

Jan. 29, 1975.

Kleiman, Cornfield & Feldman, Chicago, Ill., for plaintiffs.

R. Theodore Clark, Jr., Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., and Edward C. Hofert, Hofert & Samelson, DesPlaines, Ill., for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

The plaintiffs in this case, an international labor union and its local affiliate, have filed suit against various officials

of the Village of Elk Grove, Illinois, for deprivation of civil rights under 42 U.S.C. § 1983. Plaintiff Elk Grove Firefighters Local No. 2340 (hereafter, "Firefighters Local") is a voluntary unincorporated association of a majority of the 55 firefighters in the Fire Department of the Village of Elk Grove. Firefighters Local exists to represent its members regarding the hours, wages, and working conditions of their employment.

On June 8, 1974, less than a month after Firefighters Local was chartered by plaintiff International Association of Firefighters, AFL–CIO (hereafter, "Firefighters International"), the defendants allegedly met with all captains and lieutenants of the Fire Department and indicated that anyone present who retained or obtained membership in Firefighters Local would be discharged from employment. Apparently, all the captains and lieutenants were in fact already members and they resigned their membership that day or about a week later.

Plaintiffs seek redress for infringement of the rights of freedom of speech, assembly and association under the First Amendment to the United States Constitution. Because defendant allegedly acted under state authority, jurisdiction is asserted under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. In the alternative, plaintiffs seek jurisdiction under 28 U.S.C. § 1331.

Defendants have moved to dismiss the complaint on the following grounds: (1) Plaintiff labor unions do not have standing under § 1983 because one cannot sue for the deprivation of another's civil rights; (2) plaintiffs have failed to meet the jurisdictional amount requirement of § 1331; and (3) the complaint fails to state a cause of action upon which relief can be granted. For the reasons stated below, defendants' motion will be denied.

*I. Standing*

■ It is true as a general rule that one cannot sue for the deprivation of the civil rights of others. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). This rule is most frequently invoked where an individual alleges a deprivation of rights suffered only by other individuals. *E. g.*, Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); O'Malley v. Brierley, 477 F.2d 785 (3d Cir. 1973); Brown v. Board of Trustees of LaGrange Ind. School Dist., 187 F.2d 20 (5th Cir. 1951); Krum v. Sheppard, 255 F.Supp. 994 (W.D.Mich.1966). There have been exceptions to the rule, however, where the individual aggrieved party could not be represented in the context of the dispute before the court (Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953))·; where a property deprivation was the indirect result of a constitutional deprivation of an absent person (Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)); and where the aggrieved party would have been understandably unwilling to bring the suit himself. In N.A.A.C.P. v. Alabama, 360 U.S. 240, 79 S.Ct. 1001, 3 L.Ed.2d 1205 (1959), the attempt of members of an organization to prevent the state and the public from learning the identity of the individual members could hardly, as a practical matter, have been brought by the members themselves without revealing their identity. The policy oriented discussions of these cases suggests the propriety of something other than a rigid application of precedent.

A major concern underlying the standing requirement is that there would otherwise be too many potential plaintiffs and too much litigation. *E. g.*, Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1971); Brown v. Board of Trustees of LaGrange Ind. School Dist., *supra*. Also, there is the fear that a party not individually aggrieved would have insufficient motivation to do an adequate job of advocacy. Perhaps most important is the concern expressed in Baker v. Carr,

369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), where the Court noted that without the aggrieved person before the court, a decision would be based on a speculative situation that might never arise. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); United States v. Raines, *supra*; Barrows v. Jackson, *supra*. *Baker* further emphasized the need for adequate advocacy:

> "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination, of difficult constitutional questions?" (369 U.S. at 204, 82 S. Ct. at 703.)

██ It remains to inquire whether the labor union plaintiffs in this suit are susceptible to the above concerns, and whether, in the absence of binding precedent, there is good reason not to give them standing.[1] In this case, the plaintiffs have filed suit not only for the purpose of representing the interests of the individual captains and lieutenants who might be aggrieved, but also to protect their own very existence. An individual's privilege of belonging to a union and the union's desire to increase or maintain its membership admit to no conflict. The court thus has every reason to believe that the union will represent with appropriate zeal the interest of the captains and lieutenants. See Lodge 1858, Amer. Fed. of Gov't. Emp. v. Paine, 141 U.S.App.D.C. 152, 436 F.2d 882 (1970); United Federation of Postal Clerks, AFL–CIO v. Watson, 133 U.S. App.D.C. 176, 409 F.2d 462 (1969); *cf.* Air Line Stew. and S. Ass'n Loc. 550 v. American Airlines, Inc., 490 F.2d 636 (7th Cir. 1973). Further, all possible parties are now represented in this suit, so there is no prospect of encouraging multiple litigation by allowing standing to the present plaintiffs.

Moreover, the position of plaintiffs in this case can be likened to the earlier mentioned exceptions. Although the practical difficulty of individual employees bringing suit does not match the predicament of the members in N.A.A. C.P. v. Alabama, *supra*, there is, nonetheless, the prospect that such a suit would bring an unwanted focus on an individual as plaintiff. Also, the unions have allegedly suffered a pecuniary loss of dues which results from a constitutional deprivation of others; *cf.* Pierce v. Society of Sisters, *supra*. An additional reason for finding that these plaintiffs have standing is that if a single captain or lieutenant *were* to step forward and bring suit, the action might be mooted if he then obtained other employment; *cf.* Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L. Ed.2d 584 (1963). All of these reasons were relied upon by the Eighth Circuit Court of Appeals in conferring standing on an unincorporated association of teachers alleging racial discrimination against its members under § 1983. Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770, 777 (8th Cir. 1966).

There is no clear precedent in either the Supreme Court or the Seventh Circuit Court of Appeals for the proposition that a labor union can or cannot have standing to sue under § 1983. However, there is strong indication that an association should have such standing where, as in the present case, it has a loss or deprivation coincident with that of the member individuals, particularly where the loss to the association is of a constitutional magnitude.

In Undergraduate Student Association v. Peltason, 359 F.Supp. 320 (N.D.Ill. 1973) (three-judge court), an unincorporated student association challenged a statute that sought to condition revocation of a scholarship award on student misconduct. Writing for a three-judge panel, Judge McLaren observed that,

---

1. Although plaintiff unions are unincorporated, since this suit seeks to enforce a substantive constitutional right, *capacity* to sue is premised under Rule 17(b)(2) of the Rules of Civil Procedure.

"The courts have been increasingly willing to recognize the right of organizations to sue on behalf of their members." (359 F.Supp. at 322.) The Judge also observed two lines of thought on such *representative* action, one premising such standing on coincidental injury to the association and its members, and the other centering on the representative quality of the association, and not requiring actual injury to it. In some cases, the distinction is quite clear: Alabama Education Ass'n (Inc.) v. Wallace, 362 F.Supp. 682 (M.D.Ala.1973) (teachers association lacked standing to assert constitutional defects in school requirement that teachers make a written verification of compliance with advocacy regulation); Crossen v. Breckenridge, 446 F.2d 833 (6th Cir. 1971) (women's liberation group lacked standing to challenge Kentucky abortion statute); Alameda Conservation Ass'n v. State of Cal., 437 F.2d 1087 (9th Cir. 1971) (association, for development of area, which owned no land had no standing to contest redevelopment plans); Protestants and Other Americans, etc. v. Watson, 132 U.S.App.D.C. 329, 407 F.2d 1264 (1968) (if association did not pay taxes, it would not have standing to contest postage stamp allegedly constitutionally defective because of religious orientation).

Other cases have been more concerned with the quality of the representation in the relationship, in deciding whether an association has standing to sue under § 1983: Smith v. Board of Education of Morrilton School District No. 32, *supra*; Kennedy Park Homes Ass'n v. City of Lackawanna, 318 F.Supp. 669 (W.D.N.Y.1970), aff'd, 436 F.2d 108 (2d Cir. 1970), cert. denied, 401 U.S. 1010, 91 S. Ct. 1256, 28 L.Ed.2d 546 (1971) (civic organization had standing to contest alleged racial discrimination by city and mayor in disapproving development of subdivision); Council No. 34, Amer. Fed. of State, C. and M. Emp. v. Ogilvie, 465 F.2d 221 (7th Cir. 1972) (labor union is a proper party to represent its members when authorized to safeguard their employment interests, *dicta)*.

It is clear from all these cases that no circuit has expressly disapproved standing for an association charged with representing its members, and several, including this circuit, have approved if not held such standing under § 1983 permissible. The Supreme Court has given supporting *dicta* for this view, as well. In denying standing to the Sierra Club in Sierra Club v. Morton, *supra,* the Court reflected on the multiplicity of litigation that would result if an *uninjured* association were to have standing. More recently, the Court stated in a footnote that labor unions do have standing to sue under § 1983, in both representative and individual capacity. Allee v. Medrano, 416 U.S. 802, 819 (1974), at n. 13, 94 S.Ct. 2191, 40 L. Ed.2d 566.[2] In a separate opinion, this proposition was again firmly endorsed. 416 U.S. 802, 829, 94 S.Ct. 2191 (Burger, C. J., diss.).[3] However, the case involved harassment of both a union and

---

2. "Unions may sue under 42 U.S.C. & 1983 as persons deprived of their rights secured by the Constitution and laws, American Fed. of State, Co., and Mun. Emp. v. Woodward, 406 F.2d 137 (8th Cir. 1969), and it has been implicitly recognized that protected First Amendment rights flow to unions as well as to their members and organizers. Carpenters and Joiners Union v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143 (1942); *cf.* N.A.A.C.P. v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963)." 416 U.S. 802, 819, 94 S.Ct. 2191, 2202.

3. "In addition to any individual named appellees the Union itself may have standing to challenge the constitutionality of the statutes. The Court has long recognized that the First Amendment's guarantees of free speech and assembly have an important role to play in labor disputes. Thornhill v. Alabama, 310 U.S. 88, 102, 60 S.Ct. 736, 744, 84 L.Ed. 1093 (1940); Thomas v. Collins, 323 U.S. 516, 532, 65 S.Ct. 315, 323, 89 L.Ed. 430 (1945). I agree with the Court that unions, as entities, in addition to union members and organizers, are entitled to the benefit of those guarantees and that a union may sue under 42 U.S.C. § 1983 to enforce its First Amendment rights." 416 U.S. 802, 829, 94 S.Ct. 2191, 2207.

its members, and so fits into the category of cases which probably confers standing, without running afoul of the *Sierra dicta.*

Indeed, the only case which seems to have squarely rejected standing of a union where the injury to member and union coincides is the unofficially reported case cited by defendants, Lontine v. Van Cleave, 69 CCH Lab.Cas. ¶ 12989 (D. Colo.1972). That court indicated no reasons and distinguished no specific cases in reaching its conclusion, other than to say that contrary opinions did not specifically consider the issue of standing. *Lontine,* then, is neither binding nor persuasive. In contrast is Service Employees International v. County of Butler, Pa., 306 F.Supp. 1080 (W.D.Pa.1969), in which the plaintiff union sued to redress discharge of its members by a county. The discharge was allegedly based on membership and activities in the union. In finding standing under § 1983, the court remarked:

> "The plaintiff union here faces real disadvantage from the alleged action of the defendants, its membership and financial support may be affected adversely, therefore it has standing to complain *on behalf of its members.*" (306 F.Supp. at 1082) (Emphasis added.)

Also, in contrast to *Lontine* is the reasoning of Undergraduate Student Association v. Peltason, *supra:*

> "[Undergraduate Student Association] is a political organization whose activities depend upon the ability of its members to exercise their constitutional rights which the challenged statute purportedly limits." (359 F. Supp. at 322),

and the reasoning of National Student Association v. Hershey, 134 U.S.App.D. C. 56, 412 F.2d 1103 (1969), granting standing to sue to an organization challenging Selective Service regulations and a directive, under § 1983:

> "The appellant organizations are all student political associations. As or-

ganizations, they have been critical of the draft, or the war in Vietnam, or both; and they have been substantially involved in protest activity. With respect to the Hershey directive, *their organizational interests and those of at least many of their members coincide.* Any chilling effect on the protected protests of their members is at the same time a damper on their organizational protest activities. We think they have standing to [protect] *their own* First Amendment interests and those of their members." (412 F.2d at 1120–1) (Emphasis added; footnotes omitted.)

Given the status of constitutional right to belong to a union and to engage in union activity (Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); McLaughlin v. Tilendis, 398 F. 2d 287 (7th Cir. 1968)), the analogy to these cases is compelling.

■■ In this case, the unions have had both a First Amendment and pecuniary injury, and those injuries are logically related to the defendants' conduct. The same is true of the injuries suffered, allegedly, by the union members. Accordingly, where a union and its members are coincidentally constitutionally injured by the same conduct, the union has standing to sue under § 1983. Flast v. Cohen, *supra*; Council No. 34, Amer. Fed. of State C. & M. Emp. v. Ogilvie, *supra.* Since standing is here premised on the representative capacity of the unions, it is unnecessary to determine whether plaintiffs would have standing to sue in the absence of alleged injury to their members, or whether a union is a "person" protected under § 1983.

*II. Jurisdictional Amount*

■ Since the court holds that the plaintiff unions have standing under 42 U.S.C. § 1983, jurisdiction is founded on 28 U.S.C. § 1343. Consequently, it is unnecessary to consider whether there is an adequate jurisdictional amount under 28 U.S.C. § 1331.

## III. Failure to State a Claim

■ Defendant officials are only alleged to have held a meeting and to have made a statement. There is no claim that any employee has in fact been discharged. However, since plaintiffs allege that all captains and lieutenants have responded to the "threat" of discharge by voluntarily resigning from the unions, a valid cause of action under § 1983 is stated.

Defendants assert that other courts have ruled permissible the restrictions on union membership that some public employers have imposed on so-called "supervisory employees". Shelofsky v. Helsby, 32 N.Y.2d 54, 343 N.Y.S.2d 98, 295 N.E.2d 774 (1973), appeal dismissed, 414 U.S. 804, 94 S.Ct. 60, 38 L. Ed.2d 41 (1973). There is no question that such restrictions *may* be permissible. The First Amendment rights that plaintiffs assert are not absolute. Indeed, the National Labor Relations Act, 29 U.S.C. § 151 et seq., which served as the model for the legislation challenged in *Shelofsky*, explicitly prohibits any laws that would force an employer to collectively bargain with its supervisory employees. 29 U.S.C. § 164(a); Beasley v. Food Fair of North Carolina, 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). However, the Act does not apply to employers that are political subdivisions of States. 29 U.S.C. § 152(2). Even if it did apply, there is no indication that captains and lieutenants fit the rigorous definition of "supervisory employee". See N.L.R.B. v. Bell Aerospace Co., Div. of Textron, Inc., 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). More importantly, Illinois has no relevant statute creating such a category. See McLaughlin v. Tilendis, *supra*.

In the absence of any governing statute, this court is left with the question of whether some governmental interest justifies the particular curtailment of First Amendment rights alleged in this case. Amer. Fed. of State, Co. and Mun. Emp. v. Woodward, 406 F.2d 137 (8th Cir. 1969); McLaughlin v. Tilen-

dis, *supra*; Melton v. City of Atlanta, 324 F.Supp. 315 (N.D.Ga.1971); Atkins v. City of Charlotte, 296 F.Supp. 1068 (W.D.N.C.1969) (three-judge court). The answer to this question must await a hearing on the merits of plaintiffs' claim.

## IV. Conclusion

The court has considered defendants' motion to dismiss, and all relevant memoranda. Of course, plaintiffs' allegations have been taken as true for this consideration. For the reasons set forth herein, the motion to dismiss is hereby denied.