Corine SCOTT, Cecile Clue, Robert Cantrell, John Krut, Tim Schermerhorn, Plaintiffs–Appellees,

v.

Ronald MEYERS, Nathaniel Ford, Carmen Suardy, New York City Transit Authority (N.Y.CTA), Defendants–Appellants,

Raymond D. Goodman, Roland Shelton, Dewey Gallese, Timothy Rohanan, Richard Jenkins, Ronald Pain, John Does, 1—3, Defendants.

No. 98–7731

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1999

Decided Aug. 25, 1999

Arthur Z. Schwartz, New York, N.Y. (Lauren Esposito, Kennedy, Schwartz & Cure, P.C., New York, N.Y., Of Counsel), for Plaintiffs–Appellees.

Florence Dean, Brooklyn, N.Y. (Evelyn Jonas, Office of Martin B. Schnabel, Vice President and General Counsel, New York City Transit Authority, Brooklyn, N.Y., Of Counsel) for Defendants–Appellants.

Before: LEVAL and POOLER, Circuit Judges and CURTIN, District Judge.*

LEVAL, Circuit Judge:

The New York City Transit Authority ("the TA") and its officers appeal from a judgment of the United States District Court for the Eastern District of New York (Frederic Block, *Judge* ), enjoining enforcement of a TA rule that prohibits employees from wearing buttons, badges,

* The Honorable John T. Curtin, Senior District Judge for the United States District Court for the Western District of New York, sitting by designation.

or other insignia on their uniforms without permission. *See Scott v. Goodman,* 961 F.Supp. 424 (E.D.N.Y.1997). The district court found that the rule was an overbroad restriction on the public employees' speech in violation of the First Amendment. *Id.* at 427–28. Because the challenged rule applies to uniformed employees at times when they are not in contact with customers, as well as to employees whose duties do not involve any customer contact, we conclude that the rule is overbroad. We therefore affirm the judgment of the district court.

## BACKGROUND

Defendant New York City Transit Authority is the public authority responsible for the operation of New York City's mass transit services. The individual defendants are TA officials. Plaintiffs are TA employees who at all relevant times were members of New Directions, a dissident caucus of Local 100 of the Transport Workers Union of America ("the Union" or "Local 100"). Local 100 represents most of the TA's more than 40,000 bus and subway employees.

Plaintiffs brought this action seeking in part to enjoin enforcement of the TA's Rule 10(f). That rule (herein referred to as the "no-button rule") states, in relevant part:

> Uniformed employees are not permitted to wear buttons, badges, or other insignia other than those specified as part of the regulation uniform, except by permission of the [Transit] Authority.

According to the TA, the rule has been in effect since approximately 1979.

In January 1992, the leadership of Local 100 reached agreement with the TA, subject to ratification by the full union membership, on a three-year collective bargaining agreement (the "CBA" or "the contract"). The New Directions caucus of Local 100 opposed the contract and actively campaigned against its ratification. Beginning in early February, the caucus began distributing buttons to fellow union members proclaiming opposition to the contract. Among these buttons was a one-inch, black-and-white button reading "VOTE NO" in the center and "Transit Workers for a Just Contract" around the edge ("the Vote No buttons"). Plaintiffs estimate that New Directions distributed approximately 10,000 "Vote No" buttons to union members prior to the scheduled vote on the contract.

In early February 1992, defendant Ronald Meyers, a TA Superintendent in the subways division, observed TA employees in subway terminals wearing "Vote No" buttons on their uniforms. Meyers began instructing employees to remove these buttons. Plaintiff Tim Schermerhorn, a shop steward assigned to Meyers's division, informed New Directions's counsel of Meyers's instructions. Counsel wrote to Carmen Suardy, the TA's Vice–President for Labor Relations, and requested that Meyers cease instructing employees to remove the "Vote No" buttons on the ground that his orders violated the employees' First Amendment rights. Suardy responded that Meyers derived his authority from Rule 10(f). Suardy further asserted that the rule promoted the TA's interests in safety and efficiency and that these concerns outweighed the employees' First Amendment right to "wear[ ] buttons indicating their partisanship with respect to factional issues" when dealing with the public.

On March 26, Nathaniel Ford, the Chief Transportation Officer of the TA's Rapid Transit Office, issued a notice to employees reasserting the no-button rule. The notice further warned employees that they would be subject to discipline if they wore non-regulation insignia or clothing without permission.

Plaintiffs then filed the instant suit. The complaint sought damages and injunctive relief under 42 U.S.C. § 1983, and contended that defendants had engaged in a series of violations of plaintiffs' First Amendment rights in an effort to suppress

the advocacy of the New Directions caucus. With respect to the no-button rule, the complaint alleged both that the rule was, on its face, unconstitutionally broad, and that TA officials had violated the Constitution by selectively enforcing the rule to suppress New Directions' opposition to ratification of the 1992 contract.

Judge Block referred the parties' cross-motions for summary judgment to Magistrate Judge Roanne L. Mann for report and recommendation. On December 24, 1996, the magistrate judge recommended that the district court grant plaintiffs' motion for summary judgment on their facial challenge—the claim that the no-button rule was unconstitutionally overbroad—but recommended that both parties' motions be denied as to the claim of selective enforcement, finding that questions of material fact existed as to whether the rule had been discriminatorily enforced against members of New Directions.

On March 28, 1997, the district court adopted the magistrate judge's recommendation that plaintiffs' motion for summary judgment be granted on the overbreadth claim. Judge Block concluded that the employees' First Amendment rights outweighed the TA's interests in maintaining such a rule for purposes of efficiency, safety, and customer service. In light of this finding, the Court found it unnecessary to consider plaintiffs' claim of selective enforcement.

The court entered judgment on May 6, 1998, permanently enjoining the TA from enforcing its rule prohibiting the wearing of buttons. This appeal followed.

## DISCUSSION

Defendants raise three claims on appeal. First, they claim that the court's injunction should be dissolved as moot because the labor conflict giving rise to plaintiffs' suit has been resolved; second, that plaintiffs' claim fails because the message on the "Vote No" buttons was not addressed to a matter of public concern; third, that not-withstanding suppression of speech, Rule 10(f) is justified as a measure serving efficiency and safety. We conclude (for reasons somewhat different from those given by the district court) that the rule as written is overbroad.

### A. *Mootness*

■ Defendants contend, first, that the injunction against enforcement of the no-button rule should be dissolved as moot. The campaign to ratify the proposed union contract, during which the named plaintiffs were ordered to remove their "Vote No" buttons, ended when the membership of Local 100 voted to reject the contract in 1992. Plaintiffs are no longer seeking to wear "Vote No" buttons. Therefore defendants maintain that plaintiffs' claim for an injunction has become moot. As plaintiffs remain members of the union, and contracts must be renegotiated and ratified on a regular basis, defendants contend that this is not one of the "exceptional situations" in which a past dispute is deemed "capable of repetition, yet evading review" so as to be exempt from the mootness doctrine. *See Muhammad v. City of New York Dep't of Corrections,* 126 F.3d 119, 123 (2d Cir.1997) (internal quotation marks omitted). Defendants argue that future disputes concerning the right to wear buttons in connection with labor activities can be adjudicated if and when they arise.

We disagree with the defendants' claim of mootness. At the time plaintiffs brought the suit and throughout its maintenance, they were subject to the no-button rule and were prohibited from wearing any button they might choose to wear. The restrictive force of the rule did not cease to operate on plaintiffs when the contract ratification controversy was resolved. Because they are complaining that their expression is continually restricted by the TA's unconstitutionally overbroad prohibition on speech, plaintiffs' suit to enjoin enforcement of the no-button rule is not mooted by resolution of the particular

labor controversy that provoked them to bring the suit. See Erwin Chemerinsky, § 2.3, at 87 n. 177 (2d Ed.); Laurence Tribe, American Constitutional Law, § 3–19, at 135–36 n. 7 (2d ed.1988).[1]

We therefore reject the defendants' claim that the appeal must be dismissed as moot.

### B. *Public Concern*

■ Defendants next contend that the injunction was improperly granted because plaintiffs failed to satisfy the test of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), in that the speech curtailed by the no-button rule was not on a matter of "public concern." *See id.* at 142, 103 S.Ct. 1684 (to raise First Amendment claim under § 1983, public employee's speech must be on topic of public concern, as opposed to speech on matters of personal interest). Defendants contend the "Vote No" controversy was nothing more than a matter of factionalism within a union and difference of opinion on a proposed labor contract, which fails to qualify under the *Connick* test as a matter of public concern. Given the facts of this case, we need not decide whether the "Vote No" buttons addressed a matter of public concern. The suit is brought to enjoin enforcement of the no-button rule on the ground that it is an unconstitutionally overbroad restriction of speech. The no-button rule restricts plaintiffs' expression (through communicative buttons) on all subjects—not merely on the "Vote No" buttons around which the controversy arose. By the terms of the rule, plaintiffs are being prohibited from wearing buttons (absent permission) on abortion policy, the rights of Native Americans, trade policy toward China, the conservation of natural resources, and all other subjects. Their challenge to the overbreadth of a rule restricting speech, unlike their challenge to the allegedly discriminatory selective enforcement of the rule against New Directions, is not limited to the suppression of "Vote No" buttons but is directed against the rule's prohibition of all communicative buttons. We reject the TA's contention that the claim fails because it seeks, contrary to the *Connick* rule, to assert the First Amendment right of public employees on issues that are not of public concern.

### C. *Justification.*

■ The TA contends that, notwithstanding its breadth, the no-button rule is justified by the TA's need to operate the New York Transit System in a safe, efficient, harmonious fashion.

Because the TA is a public employer and plaintiffs are its employees, we evaluate plaintiffs' claim that the TA's no-button rule is an impermissible burden on speech under the balancing test set forth in *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). That test requires us to balance "the interests of the [employee], as citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public ser-

---

**1.** We further note that claims arising out of labor disputes have long been recognized to pose precisely the kind of "exceptional" circumstances that justify departure from strict application of the mootness doctrine. Labor disputes, such as strikes or union elections, are frequently resolved before the legal claims that arose out of them can be fully litigated, and often involve ongoing relationships between the same or similarly-situated parties that are likely to yield recurring conflicts. Accordingly, the Supreme Court has refused to dismiss such claims as moot notwithstanding resolution of the underlying dispute. *See,* e.g., *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 568–72, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984); *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125–26, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). As this dispute arises out of a labor dispute but involves a policy of broad and undifferentiated application, the applicability of the labor exception is not necessary to our decision. Since we reject the defendant's invocation of the mootness doctrine on other grounds, we leave open whether the labor exception might also apply.

vices it performs through its employees." *Id.* This approach derives from the Court's recognition that while public employees may not be forced to relinquish their First Amendment rights to comment on matters of public concern as a condition of employment, "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.; see also Connick,* 461 U.S. at 142, 103 S.Ct. 1684.

Defendants focus on three such interests, which, they assert, are furthered by the no-button rule. First, they contend that the rule promotes efficient and harmonious relationships with customers, by maintaining employees' neat and clean appearance and avoiding the problems that might result if employees were permitted to wear provocative buttons. As examples, customers might believe that the TA or city is sponsoring a political message on an employee's button; hesitate to approach an employee for assistance when they disagree with the message expressed on his button; or become embroiled in arguments with employees about controversial statements on their buttons, thus provoking conflicts and distracting the employees from their duties. Second, pointing out that the TA transports approximately five million people each working day, three and one half million through the subway system alone, defendants claim that the rule addresses safety concerns inherent in operating the City's mass transit system and reduces the risk of accidents that might result if customers or co-workers have hostile reactions to political or social messages on an employee's button. Such interactions might distract employees from their duties or lead to altercations on crowded

subway platforms or moving buses. Third, defendants contend that a rule proscribing *all* buttons, as opposed to proscribing only provocative buttons, avoids embroiling the Authority in content-based or viewpoint-based distinctions between permissible and impermissible buttons.

Plaintiffs contend the TA has not demonstrated that permitting employees to wear buttons on their uniforms sufficiently undermines those objectives to justify the rule's broad restrictions on employee speech. They argue that the TA has offered only speculative and conclusory allegations that the rule is necessary to ensure safe and efficient transportation. The district court viewed the TA's justifications as insufficient to sustain such a broad restriction on this form of employee speech.

■ Government, in its role as government, is of course severely restricted by the First Amendment from placing restraints on speech. But when government acts as an employer, the constraints of the First Amendment are less severe and must leave government free to impose reasonable restrictions on its employees in the interest of safe, efficient, and harmonious delivery of services to the public. *See Pickering,* 391 U.S. at 568, 88 S.Ct. 1731; *see also Connick,* 461 U.S. at 150–51, 103 S.Ct. 1684.

We assume, but need not decide, that a properly drafted rule, narrowly tailored to apply only to uniformed employees in circumstances that place them into contact with the public, with proper justification in the record, would pass constitutional muster.[2] However, Rule 10(f) sweeps, more broadly. Even legitimate governmental efforts to regulate speech "may not be achieved by means which sweep unnecessarily broadly and thereby invade the area

---

**2.** *Cf. United States Dep't of Justice v. Federal Labor Relations Auth.,* 955 F.2d 998, 1005–07 (5th Cir.1992) (upholding regulation prohibiting INS border patrol agents from wearing adornments, including union pins, on their uniforms); *INS v. Federal Labor Relations Auth.,* 855 F.2d 1454, 1465–67 (9th Cir.1988)

(upholding same regulation as applied to immigration inspectors, on the ground that the INS's interest in having recognizable, uniformed employees provide service to the public outweighed inspectors' interest in communicating with the public about union-related matters while in uniform and on duty).

of protected freedoms. . . . 'Even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle personal liberties when the end can be more narrowly achieved.'" *NAACP v. Alabama*, 377 U.S. 288, 307–08, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964) (quoting *inter alia Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) (footnote omitted)). The reasonable justifications advanced by the TA for the no-button rule relate to disruptions and inefficiencies that might occur by reason of the effect of messages proclaimed by employees' buttons on the public customers of the transit system. But Rule 10(f) goes farther. It prohibits the wearing of buttons at all times, regardless whether the employee's job ever places the employee in contact with the public and regardless whether the employee is in contact with the public while wearing the button.

The TA asserts that the "overwhelming majority" of its uniformed employees have job duties that bring them into contact with customers. But counsel for the TA conceded at oral argument that this is not true of all uniformed employees. Some apparently have no interaction with the public while performing their duties. Furthermore, the employees whose jobs put them in contact with the public are not necessarily in public contact throughout the day. A part of their time may be spent out of public view—in the "crew" room or on lunch break, for example. Employees may have a significant interest in wearing communicative pins at such times, when they are in contact with co-workers but not with the public. Certainly the "Vote No" pins that gave rise to this controversy were communications aimed at co-workers, rather than at the general public, which in most cases would not have known even the issue on which the button advocated a "no" vote.

Where government employees are not in contact with the public, even controversial political remarks in the workplace have been deemed "private speech," posing only a "minimal" danger to the agency's effective functioning. *See Rankin v. McPherson*, 483 U.S. 378, 390–91, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). We conclude that the dangers cited by the TA as justification for its no-button rule are not sufficiently great when buttons are worn by employees out of the presence of the public to justify this governmental restriction on free expression by employees. *See American Fed'n of Gov't Employees v. Pierce*, 586 F.Supp. 1559, 1562–63 (D.D.C. 1984) (striking down rule prohibiting all Veterans Administration employees from wearing "political" buttons as overbroad, as rule was not limited to employees who have "substantial contact with the public" or to times when employees interact with the public).

Accordingly, we agree with the district court that the rule is impermissibly overbroad, and affirm.

## CONCLUSION

The judgment of the district court is affirmed.